**UNITED STATES COURT OF INTERNATIONAL TRADE**

MUTUAL SALES, INC.

Plaintiff,

v.

The UNITED STATES OF AMERICA;
EXECUTIVE OFFICE OF THE PRESIDENT;
OFFICE OF THE U.S. TRADE REPRESENTATIVE;
JAMIESON GREER, IN HIS OFFICIAL CAPACITY
AS U.S. TRADE REPRESENTATIVE;
U.S. CUSTOMS AND BORDER PROTECTION;
RODNEY S. SCOTT, IN HIS OFFICIAL CAPACITY
AS COMMISSIONER OF
U.S. CUSTOMS AND BORDER PROTECTION

Defendants.

Court No. 26-03528

## <u>COMPLAINT</u>

Plaintiff, MUTUAL SALES, INC. ("Plaintiff") by and through its attorneys alleges and states as follows:

1. This action seeks to enforce the Supreme Court's determination that the tariffs imposed under the International Emergency Economic Power Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, were unlawful. Despite the Supreme Court's

conclusion that the President had acted outside his authority, Defendants have not refunded duties unlawfully collected from Plaintiff.

2.     Beginning in February 2025, through a series of executive orders, the President invoked IEEPA as authority to impose various new and substantial tariffs on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff was responsible for paying these tariffs on its imported goods.

3.     The first wave of these IEEPA Tariffs were imposed on China, Mexico and Canada in response to their roles in the exportation to the United States of illicit Fentanyl ("Trafficking Tariffs").  The second wave of tariffs ordered under IEEPA were initiated in April 2025 and are commonly referred to the "Reciprocal Tariffs," which varied by country of origin of the imported goods. Additionally, in August 2025, a tariff was placed on certain goods of Indian origin ("Russian Oil Tariffs"). These various tariffs are referred to collectively as the "IEEPA Tariffs" herein.

4.     "[T]he terms of IEEPA do not authorize tariffs." *Learning Res., Inc. v. Trump*, No. 24-1287 at 20, 607 U.S. --- (Feb. 20, 2026).

**PARTIES**

5.    Plaintiff, a private corporation located at 2 Corporate Park Drive, Derry, NH 03038 is a Massachusetts corporation formed in 2007, having standing to pursue this action as an importer of record into the United States of certain merchandise upon which IEEPA Tariffs that are the subject of this action were assessed and paid.

6.    Plaintiff imported goods from overseas upon which duties were collected under the putative authority of the International Emergency Economic Powers Act ("IEEPA") including but not limited to the import entries listed on the attached spreadsheet. *See* Exhibit.

7.    Plaintiff is, therefore, a "person adversely affected or aggrieved by agency action" within the meaning of 5 U.S.C. § 702 and 28 U.S.C. § 2631(i).

8.    Defendant United States of America is the federal government of the United States of America.

9.    Defendant United States of America received the IEEPA Tariffs deposited by Plaintiff and is a statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i).

10.    Defendant Executive Office of the President is the federal agency that oversees core functions of the executive branch, including the Office of the United States Trade Representative. It is headquartered in Washington, D.C.

11.     Defendant U.S. Customs and Border Protection ("CBP") is a federal agency and a component of the Department of Homeland Security, responsible for, among other things, securing ports of entry and collecting tariffs on imported goods. It is headquartered in Washington, D.C.

12.     CBP is the agency that collected the IEEPA Tariffs deposited by Plaintiff.

13.     Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

14.     Defendant Office of the United States Trade Representative ("USTR") is the federal agency responsible for developing United States trade policy. It is headquartered in Washington, D.C.

15.     Defendant Jamieson Greer is the USTR and is sued in his official capacity.

16.     The President in invoking the IEEPA authority did so by delegating to the Defendants as necessary.

17.     Defendants are referred to collectively as "Defendant" in this complaint.

18.     This action is necessary, because even though the IEEPA Tariffs have been held unlawful by the Supreme Court, Plaintiff is not guaranteed a refund for those unlawfully collected tariffs especially on import entries liquidated more than 80 days prior to the date of this filing, and other import entries not yet liquidated or still within the 19 USC 1515(d) period post-liquidation during which CBP may

4

correct the liquidation of an entry, in the absence of its own judgment and judicial relief. *Trump v. CASA, Inc.* 606 U.S. 831 (2025).

19.    Through this action, Plaintiff asks the Court to hold for it exactly what it and the Federal Circuit already held in *V.O.S. Selections* and the Supreme Court in *Learning Resources*: that the IEEPA Tariffs imposed by Defendant, and the underlying executive orders that directed them, are unlawful.

20.    Plaintiff also seeks a refund of all the IEEPA Tariffs that it deposited with interest, as provided by law, a permanent injunction preventing Defendant from imposing IEEPA Tariffs on Plaintiff's merchandise, and such further relief as the Court deems appropriate.

## JURISDICTION AND STANDING

21.    The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1581(i) because this action is commenced against the United States and arises out of an executive order providing for tariffs. 28 U.S.C. § 1581(i)(1)(B); *V.O.S. Selections, Inc. v. Trump,* 149 F.4th 1312, 1329 (Fed. Cir. 2025) (*en banc*) *aff'd Learning Res.*, No. 24-1287 at n.1.

22.    The Court has all the powers at law and in equity as a United States district court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order all appropriate

5

relief, including but not limited to declaratory judgments, reliquidation of entries, and injunctions. 28 U.S.C. § 2643(a)(1), (c)(1).

23.     Plaintiff has standing to seek the relief it requests because it is an importer of record that paid IEEPA Tariffs to CBP on its entries of imported goods, including but not necessarily limited to those appearing on the attached spreadsheet (*see* Exhibit) and will continue to import merchandise that, absent injunctive relief, could be subject to IEEPA Tariffs. A favorable decision striking down the IEEPA Tariffs, ordering their refund, and enjoining their future collection will redress specific Plaintiff's actual and imminent economic injuries.

24.     Due process requires that the Defendant refund the IEEPA Tariffs that Plaintiff has deposited and that Defendant has unlawfully collected. *See McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36-39 (1990).

25.     Defendant has already represented that it would "issue refunds" of the IEEPA Tariffs in successfully moving for a stay of this Court's order invalidating those tariffs. *V.O.S. Selections, Inc. v. Trump*, No. 25-1812, ECF No. 6 at 25 (Fed. Cir. May 29, 2025); *see V.O.S. Selections, Inc. v. Trump*, 2025 WL 1649290, at *1 (Fed. Cir. June 10, 2025) (*en banc*) (*per curiam*) (granting a stay pending appeal).

26.     Defendant has represented that it "would not oppose the Court's authority to order reliquidation of entries of merchandise subject to the" IEEPA Tariffs to avoid an injunction of liquidation. *Princess Awesome, LLC v. U.S. Customs and*

*Border Prot.*, Court No. 25-00078, Joint Stipulation ¶ 2, ECF No. 17 (Ct. Int'l Trade May 28, 2025).

27.    Defendant has also represented that it does "not oppose the reliquidation of any entries of goods subject to IEEPA Tariffs paid by plaintiffs that are ultimately found to be unlawful after appeal," adding that plaintiffs were "guaranteed payment … should the Court's decision be upheld," in successfully moving for a stay of a district court's order invalidating the IEEPA tariffs. *Learning Res., Inc. v. Trump*, No. 25-cv-01248-RC, ECF No. 41 at 13 (D.D.C. June 2, 2025); *see id.*, ECF No. 42 (June 3, 2025) (granting stay pending appeal).

28.    Because of these representations in court filings made to obtain and avoid judicial intervention, Defendant is judicially estopped from contesting this Court's authority to order IEEPA Tariff refunds. *See Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019).

## TIMELINESS

29.    Actions brought in this Court under 28 U.S.C. § 1581(i) must be commenced "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

30.    This action was timely commenced within two years of the executive orders implementing the IEEPA Tariffs.

## BACKGROUND

31.    Beginning in February 2025, the President, relying on IEEPA, issued several executive orders imposing tariffs on imported merchandise.

32.    The first series of executive orders (the "Trafficking Tariff Orders" a.k.a. the "Fentanyl" tariffs or duties) imposed tariffs under IEEPA on imported merchandise of Canada, Mexico, and the People's Republic of China or modified those tariffs. Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 1, 2025); Executive Order 14194, *Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 1, 2025); Executive Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 1, 2025); *see, e.g.*, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 5, 2025); Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 3, 2025).

33.    The second series of executive orders (the "Reciprocal Tariff Orders") imposed tariffs under IEEPA on most imported merchandise, or modified those tariffs, to address trade deficits with the United States' trading partners, among other issues. Executive Order 14257, *Regulating Imports with a Reciprocal Tariff*

8

*to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 2, 2025); *see, e.g.,* Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Executive Order 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

34.    Following discussions with Chinese officials, the President lowered the China-specific Reciprocal Tariff rate to 10 percent, effective until August 12, 2025, observing that these discussions were "a significant step by [China] toward remedying non-reciprocal trade arrangements and addressing the concerns of the United States relating to economic and national security matters." Executive Order No. 14298, *Modifying Reciprocal Tariff Rates to Reflect Discussions with the People's Republic of China*, 90 Fed. Reg. 21,831,21,831-32 (May 12, 2025). On July 7, 2025, the President paused enforcement of all Reciprocal Tariffs until August 1, 2025. Executive Order No. 14316, *Extending the Modifications of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30,823, 30,823 (July 7, 2025). On July 31, 2025, the President again paused enforcement of the Reciprocal Tariffs for seven days. Executive Order No. 14326, *Further Modifying the Reciprocal Tariff Rates*,

90 Fed. Reg. 37,963, 37,963-64 (July 31, 2025). The Reciprocal Tariffs (other than for China) took effect on August 7, 2025.

35.    The third series of executive orders (the "Country-Specific Tariff Orders") imposed tariffs under IEEPA on imported merchandise of Brazil and India, or modified those tariffs. *See, e.g.*, Executive Order 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37,739 (July 30, 2025); Executive Order 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 6, 2025); Executive Order 14361, *Modifying the Scope of Tariffs on the Government of Brazil*, 90 Fed. Reg. 54,467 (Nov. 20, 2025).

36.    The executive orders also modified, or directed federal agencies to modify, the Harmonized Tariff Schedule of the United States ("HTSUS") to include the IEEPA Tariffs in various chapter 99 headings.

37.    Plaintiff challenges all the Executive Orders identified in the above paragraphs as well as any subsequent modifications, each of which the Supreme Court held unlawful in *Learning Resources*.

38.    In Executive Order No. 14389, *Ending Certain Tariff Actions*, 91 Fed. Reg. 9,437 (Feb. 25, 2026), the President directed that the various orders imposing IEEPA Tariffs "shall no longer be in effect and, as soon as practicable, shall no longer be collected."

10

39.    In implementing Executive Order No. 14389 through Cargo Systems Messaging Service Message No. 6783431, *Ending Collection of International Emergency Economic Powers Act Duties*, CBP stated that "[d]uties imposed pursuant to IEEPA … will no longer be in effect and will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026."

40.    On March 5, 2026, the Court issued an order in a different matter directing that CBP liquidate or reliquidate (where liquidation was not final) all entries of merchandise made by all importers without the collection of IEEPA duties. *Atmus Filtration, Inc. v. United States*, Court No. 26-1259 (Ct. of Int'l Trade), ECF No. 30 (*Atmus*).

41.    On the following day, a CBP employee submitted a declaration stating that the agency was in the process of devising a methodology to process refunds of IEEPA Tariffs, but that liquidations would continue and that it would not be able to comply with the Court's order for up to 45 days. *Atmus*, Court No. 26-1259, ECF No. 31.

42.    The Court issued subsequent orders in *Atmus* in which it continued the stay of its March 5 order and, in an order dated March 20, 2026, the Court clarified that its order covered "any and all entries" of merchandise that remain unliquidated or

are not finally liquidated and, thus, cover entries subject to the India and Brazil orders.

43.    There was no final and conclusive judgment in *Atmus* requiring the liquidation or reliquidation of all entries of merchandise without regard to IEEPA Tariffs.

44.    Moreover, on April 6, 2026, Atmus voluntarily dismissed its complaint.

45.    On April 7, 2026, the Court lifted the stay in a different IEEPA refund case, *Euro-Notions Florida, Inc. v. United States*, Court No. 25-595 (Ct. of Int'l Trade) (*Euro-Notions*), and issued an order directing liquidation or reliquidation of all entries of merchandise without regard to IEEPA Tariffs.

46.    On April 20, 2026, the Court issued another stay in *Euro-Notions*.

47.    On April 20, 2026, CBP also launched the Consolidated Administration and Processing of Entries ("CAPE") portal, new functionality in the Automated Commercial Environment (ACE), that would allow importers of record or their customs brokers to file declarations to obtain refunds of IEEPA Tariffs.

48.    To date, entries liquidated more than 80 days have been excluded from CAPE.

49.    Additionally, on June 3, 2026, the government appealed the universal injunction issued in *Euro-Notions* to the U.S. Court of Appeals for the Federal Circuit (CAFC).

12

50.    On June 23, 2026, the plaintiff in a different IEEPA refund case, *Freestyle World, Inc. v. United States*, Court No. 26-1088 (Ct. of Int'l Trade) (*Freestyle World*) moved for class certification and a lift of the stay in that case.

51.    On July 16, 2026, Euro-Notions voluntarily dismissed its complaint.

52.    On July 17, 2026, the Court selected *Freestyle World* as the new lead IEEPA refund case and issued an order directing the filing of a report on the status of CAPE by August 4, 2026.

53.    CBP filed the required status report in *Freestyle World* on August 4, 2026 and the Court heard oral argument on the motion for class certification on August 6, however, to date there has not been a final decision in that or any other IEEPA refund case.

54.    The government's appeal of the universal injunction in *V.O.S. Selections* remains pending before the CAFC.

55.    Plaintiff classified its imported merchandise under chapter 99 headings imposing IEEPA Tariffs, as required by the HTSUS.

56.    Importers of record, like Plaintiff, were required to deposit estimated IEEPA Tariffs, like all other duties, at the time of entry. 19 U.S.C. § 1505(a).

57.    Plaintiff has paid all estimated duties, taxes, and fees, including IEEPA Tariffs, owed on its entries of imported merchandise.

## DISCUSSION

### IEEPA Does Not Authorize the President to Impose Tariffs

58. Plaintiff incorporates paragraphs 1 through 57 by reference as though set out in full.

59. The imposition of tariffs under IEEPA by executive order, including the Trafficking Tariff Orders, Reciprocal Tariff Orders, and Country-Specific Tariff Orders, as well as the implementation of such tariffs through the modification of the HTSUS and the collection of such tariffs by CBP, is unlawful because IEEPA does not provide the President the authority to impose tariffs on imported merchandise.

60. IEEPA delegates to the President the authority to "regulate … importation" of property in which "any foreign country" or foreign national has an "interest," to "deal with an unusual and extraordinary threat with respect to which the national emergency has been declared …." 50 U.S.C. §§ 1701(b), 1702(a)(1)(B).

61. The power to "regulate … importation" does not include the power to impose tariffs.

62. "The power to 'regulate' has long been understood to be distinct from the power to 'tax.'" *V.O.S. Selections*, 149 F.4th at 1332-33.

63. To "regulate" is "to direct by rule or restriction." *Black's Law Dictionary* 1556 (5th ed. 1979).

64.    Tariffs are not "rules" or "restrictions" on importation, such as licensing or certification requirements, *V.O.S. Selections*, 149 F.4th at 1334 n.15, but rather taxes on imports.

65.    To "regulate" also does not include the power to impose tariffs because it appears alongside other verbs – including "investigate, block during the pendency of an investigation," "direct and compel, nullify, void," and "prevent or prohibit," 50 U.S.C. § 1702(a)(1)(B) – none of which connote revenue-raising impositions. *V.O.S. Selections*, 149 F.4th at 1333-34.

66.    Additionally, the phrase "regulate … importation" cannot include the power impose tariffs because taxes, including tariffs, "cannot be imposed without clear and express words for that purpose." *United States v. Isham*, 84 U.S. (17 Wall.) 496, 504 (1873); *Eidman v. Martinez*, 184 U.S. 578, 583 (1902).

67.    The verb "regulate" does not clearly and expressly provide the authority to impose tariffs or taxes.

68.    Furthermore, whether and at what rate to impose tariffs on imported merchandise are decisions "of vast economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 716 (2022).

69.    Under the major-questions doctrine, Congress could not have delegated to the President the authority to impose tariffs of national economic importance through the brief phrase "regulate … importation." *See Biden v. Nebraska*, 600

U.S. 477, 505-06 (2023); *Ala. Assoc. of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 764-65 (2021).

70.    The major-questions doctrine therefore confirms that Congress did not provide the President the power to impose tariffs through IEEPA's phrase "regulate … importation." *V.O.S. Selections*, 149 F.4th at 1334-36.

71.    The Supreme Court affirmed, explaining that "the terms of IEEPA do not authorize tariffs." *Learning Resources*, No. 24-1487 at 20.

72.    Because IEEPA does not provide the President the authority to impose tariffs, the Trafficking Tariff Orders, Reciprocal Tariff Orders, Country-Specific Tariff Orders, HTSUS modifications implementing those executive orders, and CBP's collection of IEEPA Tariffs, are *ultra vires*.

## IEEPA Does Not Constitutionally Delegate to the President the Power to Impose Tariffs

73.    Plaintiff incorporates paragraphs 1 through 72 by reference as though set out in full.

74.    The imposition of tariffs under IEEPA by executive order, including the Trafficking Tariff Orders, Reciprocal Tariff Orders, and Country-Specific Tariff Orders, as well as the implementation of such tariffs through the modification of the HTSUS and the collection of such tariffs by CBP, is also unlawful because

IEEPA does not constitutionally delegate to the President the power to impose tariffs.

75.    The Constitution provides only Congress, and not the President, the "power to lay and collect taxes, duties, imposts and excises[.]" U.S. Const. art. I, § 8, cl. 1.

76.    Congress cannot delegate its power to the President without providing an "intelligible principle" to guide the exercise of that power. *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928).

77.    Specifically, to delegate its power to the President without violating the separation of power, Congress must at minimum make "clear" both the "general policy" that the President must pursue and the "boundaries" that the President may not cross, as well as provide "sufficient standards to enable both the courts and the public to ascertain whether" the President "has followed the law." *FCC v. Consumers' Res.*, 606 U.S. 656, 673 (2025) (quotation and alteration omitted).

78.    The "guidance" that Congress must provide when delegating its power to the President is "greater" when the exercise of that power will "affect the entire national economy than when it addresses a narrow, technical issue." *Consumers' Res.*, 606 U.S. at 673 (quotation omitted).

79.    Even if the phrase "regulate … importation" delegated to the President the power to impose tariffs (and it does not), IEEPA fails to supply an intelligible principle guiding the exercise of power.

80.    In this case, IEEPA must provide even greater guidance than might otherwise be sufficient under the nondelegation doctrine because the IEEPA Tariffs are not a narrow, technical issue, but rather affect, and are intended to affect, the entire national economy. *See, e.g.*, Executive Order 14257, *Regulating Imports With a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 2, 2025).

81.    IEEPA fails to clearly set forth the general policy and boundaries that the President must follow in imposing tariffs.

82.    For example, IEEPA does not set forth any quantitative or qualitative limits on tariffs, such as rate caps, unrenewable time limits, or prerequisite investigations and findings that could guide the President in imposing tariffs. *Cf., e.g.*, 19 U.S.C. §§ 1338, 1862, 2132(a), 2251, and 2411.

83.    If the phrase "regulate … importation" provided the President the authority to impose tariffs, IEEPA would unconstitutionally give the President "virtually unfettered" authority over the national economy. *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 542 (1935).

84.    Because IEEPA would violate the nondelegation doctrine if it provided the President the authority to impose tariffs, the Trafficking Tariff Orders, Reciprocal Tariff Orders, Country-Specific Tariff Orders, HTSUS modifications

implementing those executive orders, and CBP's collection of IEEPA Tariffs, are unconstitutional.

**Defendant is Unlawfully Refusing to Refund Illegally Exacted IEEPA Tariffs**

85.    Plaintiff incorporates paragraphs 1 through 84 by reference as though set out in full.

86.    Since the Supreme Court's decision in *Learning Resources*, Defendant has ceased to collect deposits of IEEPA Tariffs on entries of merchandise made on or after February 24, 2026. However, Defendant has not refunded all IEEPA Tariffs previously collected.

87.    The Supreme Court concluded that "the terms of IEEPA do not authorize tariffs." *Learning Res.*, No. 24-1487 at 20. Accordingly, continued retention of IEEPA Tariffs falls outside the President's delegated authority and misconstrues IEEPA. *Motions Systems Corp. v. Bush*, 437 F.3d 1356, 1364 (Fed. Cir. 2006) (*en banc*).

88.    Collection of IEEPA Tariffs has been unlawful since that statute's enactment. "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." *United States v. Security Industrial Bank*, 459 U.S. 70, 79 (1982); *see also Kuhn v. Fairmont Coal*

19

*Co.*, 215 U.S. 349, 372 (1910) (Holmes, J., dissenting). ("Judicial decisions have had retrospective operation for near a thousand years").

89.     The collection of IEEPA Tariffs was void *ab initio* and the Court should order CBP to refund all IEEPA Tariffs collected from Plaintiff with interest as provided by law.

## COUNT I

## LIQUIDATION OR RELIQUIDATION FREE OF IEEPA TARIFFS

90.     Plaintiff incorporates paragraphs 1 through 89 by reference as though set out in full.

91.     Defendant's collection and continued retention of IEEPA Tariffs is unlawful because the President exceeded his statutory authority in issuing the various executive orders described in the above paragraphs and imposing IEEPA Tariffs on Plaintiff's entries of merchandise.

92.     Plaintiff respectfully requests that the Court apply its precedent and the controlling Supreme Court and Federal Circuit precedent to declare the executive orders described in the above paragraphs unlawful as to Plaintiff, enjoin Defendant from enforcing them as to Plaintiff, and order liquidation or reliquidation of all of Plaintiff's entries of merchandise for which it has or will in the future pay any IEEPA Tariffs, and refund all IEEPA Tariffs collected from Plaintiff with interest

as provided by law that have not already been refunded in response to Plaintiff's June 20, 2026 Phase One CAPE refund request.

## COUNT II

## DECLARATORY JUDGMENT

93. Plaintiff incorporates paragraphs 1 through 92 by reference as though set out in full.

94. This Court has the authority "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

95. This action presents an actual controversy regarding the President's authority to impose tariffs under IEEPA, the constitutionality of IEEPA as applied to the President's executive orders imposing IEEPA Tariffs, and the authority of Defendant to implement and collect the IEEPA Tariffs through the HTSUS.

96. Plaintiff has suffered injury in fact because it is an importer of record that paid estimated IEEPA Tariffs on merchandise that it imported and will continue to pay such IEEPA Tariffs on imported merchandise absent judicial relief.

97. The Court should exercise its equitable authority to issue a declaratory judgment that the imposition of tariffs under IEEPA by executive order, including the Trafficking Tariff Orders, Reciprocal Tariff Orders, and Country-Specific Tariff Orders, is unlawful – because this Court's decision in *Learning Resources*,

as affirmed by the Federal Circuit, so holds; because the IEEPA Tariff Orders are *ultra vires*; or because IEEPA unconstitutionally delegates legislative power to the President – and that CBP consequently lacks the authority to implement and collect the IEEPA tariffs.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

(a)     declare that the President lacks the authority to impose tariffs under IEEPA or, alternatively, declare that IEEPA unconstitutionally delegates to the President the authority to impose tariffs.

(b)     declare that the Trafficking Tariff Orders, Reciprocal Tariff Orders, and Country-Specific Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

(c)     declare that CBP, with respect to Plaintiff, CBP lacks authority to liquidate entries with the assessment of any of the IEEPA Tariffs or to collect any duties set out in the HTSUS that are based on any of the IEEPA Tariff orders;

(d)     order Defendant to reliquidate Plaintiff's entries of imported merchandise subject to IEEPA Tariffs and refund to Plaintiff all IEEPA Tariffs that it paid, with all interest as provided by law not

already refunded in response to Plaintiff's June 20, 2026 CAPE Phase

One refund request;

(e)    permanently enjoin Defendant from assessing IEEPA Tariffs on

Plaintiff's entries of imported merchandise;

(f)    award Plaintiff its costs and attorneys' fees; and

(g)    grant Plaintiff such further relief as this Court deems appropriate.

Respectfully submitted,

SIMON GLUCK & KANE LLP

By:    /s/Mariana del Rio Kostenwein
Mariana del Rio Kostenwein
Daniel J. Gluck
Christopher M. Kane
535 Fifth Avenue, Fourth Floor
New York, New York 10017
Tel: (212) 775-0055
mdelrio@customs-law.com

*Counsel for Plaintiff*

Dated:    August 7, 2026

23